The STATE of Ohio, Appellee,

v.

CRAWFORD, Appellant.

[Cite as *State v. Crawford* (1996), 117 Ohio App.3d 370.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960042.

Decided Dec. 31, 1996.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Tina I. Ernst, Assistant Prosecuting Attorney, for appellee.

Philip M. Bluestein, for appellant.

HILDEBRANDT, Presiding Judge.

Defendant-appellant Richard Crawford appeals his conviction for three counts of aggravated drug trafficking following a jury trial. Appellant asserts three assignments of error. Because we find no prejudicial error in the proceedings below, we affirm the judgment of the court of common pleas.

Appellant assigns three errors to the decision of the trial court:

"First Assignment of Error

"The trial court erred to the prejudice of defendant-appellant by refusing to excuse a juror and failing to grant a mistrial and failing to even voir dire the juror when the juror had preconceived notions about African Americans.

"Second Assignment of Error

"The trial court erred to the prejudice [of defendant-appellant] when it erroneously admitted the transcripts of the audiotapes into evidence over objection and then failed to give a jury instruction regarding the transcripts.

"Third Assignment of Error

"The trial court erred to the prejudice of defendant-appellant by finding him guilty of three counts of aggravated trafficking when such a finding was against the manifest weight of the evidence."

We will address each of the assignments separately.

## FACTUAL BACKGROUND

Detective Elizabeth Netherland of Norwood, Ohio, learned that a confidential informant had informed another officer that appellant and another person at his residence were selling crack cocaine. The informant, Felicia Montgomery, agreed to assist Detective Netherland in making controlled purchases of crack cocaine from appellant and his roommate.

The procedure for the controlled purchases was essentially the same each of the three times that Montgomery visited appellant's residence in June 1995. Montgomery was searched to ensure that she had no money or drugs on her person. She was then equipped with a transmitter that would enable Detective Netherland to hear and record Montgomery's conversations with any other person. Netherland then gave Montgomery currency, the serial numbers of which had been previously recorded, to make the purchase of the cocaine.

Montgomery approached the appellant's residence three times: June 9, 1995, June 12, 1995, and June 15, 1995. On each occasion, Montgomery asked appellant and his roommate if they could get her a certain amount of crack cocaine (a "twenty" on the first two occasions and a "fifty" on the third). On

June 9, 1995, appellant's roommate handed the crack cocaine to Montgomery, remarking that the amount was all that appellant had given him to give to her. Montgomery handed the money to appellant for the drug. On the second and third occasions, appellant both physically transferred the crack cocaine to Montgomery and accepted the money from her.

Upon receiving the drugs, Montgomery met with Detective Netherland and gave her the crack cocaine. Netherland placed the drugs in a marked envelope. She searched Montgomery to ensure that she had no other drugs on her and that she had no money on her.

The drugs given to Montgomery and then to Netherland were analyzed and determined to be cocaine. Appellant and his roommate were subsequently arrested and indicted for drug trafficking.

At appellant's trial, Netherland and Montgomery both testified to the purchasing procedure described above. The state additionally played the tape recordings that had been made of Montgomery's encounters with appellant. Transcripts of the tape recordings were provided to the jurors to assist them in understanding the conversation on the tapes, since the voices were somewhat muffled and distinguishing different voices was difficult. As the tapes were played in open court, Detective Netherland and Montgomery pointed out places in the transcripts of the tapes that were inaccurate.

At the close of the state's case, appellant's counsel requested a conference with the judge. Appellant's counsel claimed that one of the jurors, despite her earlier denial, did in fact know the family of one of the defense witnesses and that the juror had "preconceived disposition and notions about African Americans." At first, appellant's counsel requested the court to question the juror. However, when the judge asked, "Is that what you want me to do, talk to her?" counsel responded, "No, I want you to excuse her on the basis of what I told you, and my belief and conclusion and assertion that she can't be fair and impartial * * *." The judge overruled this request.

Appellant's counsel then indicated that he would not present any witnesses. When the judge began receiving items into evidence, appellant's counsel objected to the introduction of the transcripts of the tapes into evidence and to sending the transcripts to the jury room. The judge overruled the objection, admitted the transcripts into evidence, and permitted the jury to take the transcripts to the jury room with them.

Appellant was found guilty on all counts.

## APPELLANT'S FIRST ASSIGNMENT OF ERROR

Appellant claims that the court erred to his prejudice in failing to excuse one of the jurors on the panel, juror Prewitt, after appellant's counsel informed the trial

court that a defense witness claimed that juror Prewitt in fact knew her family and had preconceived notions about African Americans. We find that this assignment of error is not well taken.

Appellant correctly points out that a juror may be dismissed for cause if the juror is "possessed of a state of mind evincing enmity or bias toward the defendant." Crim.R. 24(B)(9). However, Crim.R. 24(B)(9) further provides:

"[N]o person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied *from the examination of the juror or from other evidence,* that he will render an impartial verdict according to the law and the evidence submitted to the jury at the trial." (Emphasis added.)

Whether to remove a juror is within the sound discretion of the court. Unless the trial court acted unreasonably, arbitrarily or unconscionably, the decision will not be overturned on appeal. *State v. Phillips* (1995), 74 Ohio St.3d 72, 656 N.E.2d 643.

In this case, evidence from the examination of the juror and other evidence support the trial judge's decision not to disqualify the juror. The transcript of the voir dire of the potential jurors was included as part of the record of this case, and the voir dire demonstrates that, even if the juror had had preconceived notions about African Americans,[1] both the prosecution and the defense took measures to ensure that the jury that was impaneled would be able to fairly decide the case on the evidence introduced in the trial.

The judge specifically asked the jurors in voir dire whether they knew defendant, and only one juror stated that he thought he might know him. He was excused for cause. Defense counsel indicated that he intended to call the defendant and Helen Laney as witnesses. The judge again questioned the jury as to whether any of them knew those two persons, and again all of the jurors, including juror Prewitt, denied knowing them.

Juror Prewitt was specifically questioned by both the prosecution and defense. She related, when asked, the quite personal story of a break-in at her home and a man's attempt to rape her. She also volunteered the information that she had formerly lived in Norwood, the neighborhood where the alleged crimes had taken place. In response to questioning, juror Prewitt stated that she could "be fair

---

1. Neither the record nor appellant's brief on appeal identifies just what the "preconceived notions" were. It seems that the court was to assume that the notions were adverse to appellant, based on appellant's counsel's assertion that the juror would be unable to give his client a fair trial.

and impartial in hearing the evidence and rendering a verdict if chosen for the jury."

Defense counsel also interviewed juror Prewitt in voir dire. She stated that she did not think that a police officer's testimony was always truthful, and that she did not give an officer's testimony more credence that an ordinary citizen. She denied that she felt a certain way about persons who had committed crimes based on her past experience as a victim.

Defense counsel also specifically addressed the jury regarding stereotypes and prejudices against black men. He asked all of the members of the jury whether they had preconceived notions about black men and their propensity to commit crime. Two jurors spoke up, specifically denying having any such stereotypical thoughts, and no juror indicated any preconceived notions. In closing, defense counsel asked whether every juror could give the defendant the same objectivity and opportunity that they would give their own children, and they all responded that they could.

Both defense counsel and the prosecutor passed for cause. Both counsel were given the opportunity to exercise peremptory challenges, but neither used all of his peremptory challenges.

Just after the impaneling of the jury, defense counsel and the prosecutor met at sidebar with the judge. Defense counsel referred to Helen Laney, his potential defense witness, and stated that she was disturbing him. He stated that he had tried to get her out of the courtroom, and requested that the judge "just throw her out." The judge eventually ordered separation of witnesses, and Laney left the courtroom.

At the end of the second day of trial, after the state had put on its case in chief, defense counsel requested a conference with the judge. At that time, counsel stated that he had just been informed by Laney that juror Prewitt knew Laney and her family and that juror Prewitt had preconceived notions about African Americans. Counsel did not state what these preconceived notions were, nor did he offer affidavit testimony or even the live testimony of Laney to substantiate his claim.

During this conference, defense counsel also admitted that Laney had believed from the time of the impaneling of the jury that Prewitt knew her family. Her disruption in the courtroom, which resulted in defense counsel's request that the court "just throw her out," was apparently her attempt to get counsel's attention and alert him to the possible prejudice of the juror.

As stated earlier, if the trial court is satisfied *from the examination of the juror* or *from other evidence* that a juror will be able to render an impartial verdict according to the law and the evidence submitted to the jury at the trial,

then the juror will not be excused. Whether to remove a juror is within the sound discretion of the court. Unless the trial court acted unreasonably, arbitrarily, or unconscionably, the decision will not be overturned on appeal. See *State v. Phillips* (1995), 74 Ohio St.3d 72, 656 N.E.2d 643.

Here, counsel's questions to the jury and to juror Prewitt in particular support the trial court's decision not to disqualify her. She was forthright in answering counsel's questions, and she unequivocally stated that she could be fair and impartial.

■ Appellant appears to argue that the court was required to examine the juror at the time the allegation of preconceived notions was raised, but the rule does not require this process. Crim.R. 24(B)(9) states that no juror shall be dismissed from service if the court, from *the* examination of the jurors (not necessarily the *judge's* examination) or *other evidence* that the juror can be fair and impartial.

Juror Prewitt had already answered the questions that defense counsel apparently wanted the judge to ask: whether she knew appellant or Laney, whether she had preconceived notions about African Americans, and whether she could give appellant a fair and impartial trial. The judge's decision to retain juror Prewitt was reasonable in light of the examination of her, which indicated her impartiality.

Moreover, the judge was not provided any evidence other than defense counsel's assertion and belief that the juror had preconceived notions about African Americans. Laney did not testify before the judge, nor did she provide a sworn statement to that effect. No other evidence was introduced to show that the juror knew the family or could not be impartial. The judge's decision to retain the juror was not arbitrary or capricious.

Finally, it should be noted that the defense witness Laney (who was also appellant's domestic partner) had allegedly believed from the start of the trial that the juror knew her family and she had attempted to inform defense counsel of this as early as the voir dire, when counsel had her removed from the courtroom. Counsel and Laney could have conferred during any of the numerous breaks in the two-day trial. The possibility of prejudice, however, was not mentioned until the close of the state's case, at which point counsel for appellant moved for a mistrial. The judge was entitled to take all of the relevant circumstances into account in determining whether to disqualify juror Prewitt, and we find that his decision was not unreasonable, arbitrary or capricious in this case.

Appellant's first assignment of error is not well taken, and we hereby overrule it.

## APPELLANT'S SECOND ASSIGNMENT OF ERROR

■ Appellant further argues that the trial court erred to his prejudice by giving the jury the transcripts of the tapes to take to the jury room while the jurors were deliberating.

Evid.R. 1002, also known as the "best evidence" or "original writing" rule, states that to prove the content of a writing or a tape recording, the original document or tape must be introduced into evidence, except under limited circumstances not at issue in this case.

Here, the state introduced tape recordings of the alleged drug transactions between appellant and Montgomery. The state also provided the jury with transcripts of the tapes during the trial to assist the jurors in understanding the tapes, which were somewhat muffled. During trial, both Officer Netherland and Montgomery indicated that there were portions of the transcripts that were wrong. They testified from their experience as to the correct version of the tapes, and their testimony was consistent in all respects.

Appellant argues that it was error for the court to allow the jurors to take the transcripts with them after the trial for deliberation since the transcripts purported to reflect or prove the contents of the tapes. See Evid.R. 1002.

In *State v. Waddy* (1992), 63 Ohio St.3d 424, 588 N.E.2d 819, the Ohio Supreme Court considered the use of transcripts to assist the jury in listening to a tape recording. The court held that because the transcripts were not admitted into evidence, Evid.R. 1002 did not come into play. The court went on to hold that because there were no material differences between the tape and the transcript, allowing the jury to use the transcript as a listening aid was not prejudicial error.

Likewise, other courts have held that when no prejudice results to the defendant from the admission of the transcripts into evidence, any error in giving the jury the transcripts is harmless. See, *e.g., State v. Rogan* (1994), 94 Ohio App.3d 140, 163, 640 N.E.2d 535, 550 (if error in admitting transcripts does not affect substantial rights, error is harmless); *In Re Garrett* (July 31, 1996), Hamilton App. No. C–950243 unreported, 1996 WL 426721 (transcript was substantially accurate; also, case tried to a judge, not jury, so no prejudice).

Appellant points to only one instance in a transcript that contained error. Appellant claims that "on at least two occasions the transcriber inaccurately identified the person speaking on the tape as the Defendant when in fact it was [another person]." A review of the record of the trial, however, shows that Officer Netherland and informant Montgomery separately testified regarding that discrepancy. Both indicated, without prompting or hesitation, that the transcript was in error on that one point, and that a statement attributed to appellant had not been made by him.

The mistaken or inaccurate reference concerned information that was immaterial to the proof of guilt of appellant. The discrepancy related to a conversation about why appellant wanted Montgomery to pay for the drugs immediately and then wait for appellant to bring the drugs back. The conversation and the mistaken identification of appellant as a speaker were so tenuously related to the transactions of which appellant was accused that there could be no prejudice from the introduction of the transcripts.

Our review of the record shows that the tape recordings were clear enough and transcribed accurately enough as they related to the relevant facts: Montgomery requested drugs, she obtained drugs from appellant, and she paid appellant for the drugs.

Moreover, the tapes merely corroborated Montgomery's live testimony at trial. Her testimony that she purchased drugs from appellant, corroborated by Netherland, was independent evidence substantial enough to uphold the jury verdict. Accordingly, there was no reversible error in the admission of the transcripts.

Appellant's second assignment of error is overruled.

## APPELLANT'S THIRD ASSIGNMENT OF ERROR

■ Appellant claims that the verdict was against the manifest weight of the evidence. Appellant's primary argument is that the informant, Montgomery, was not a credible witness and that his conviction based on her testimony was erroneous.

Appellant's accusations of the weakness of the informant's testimony and veracity are not supported by the record. Montgomery did *not*, as appellant alleges, "blatantly [lie] on the stand regarding her criminal record." Detective Netherland stated that Montgomery had been arrested for picking up a prescription that had been illegally ordered by her uncle. She specifically corrected counsel on this matter:

"Q. So apparently [Montgomery] falsified a prescription in order to get drugs?

"A. No, [she] did not. [Her] uncle * * * had called in a false prescription to a pharmacy and asked her to pick it up."

Nevertheless, during cross-examination of Montgomery, appellant's counsel attempted to get her to admit she had been arrested for falsification, and then for presenting a false prescription. Montgomery denied that she had been in legal trouble for either of those two things, and the record does not show otherwise. Appellant's argument that the primary witness against him was not credible is wholly unsupported by the record.

Appellant's only other argument is that the tapes were unclear and misleading. As stated earlier, we have reviewed the tapes and found them to be generally audible and clear concerning the relevant aspects of the transactions that formed the basis for the charges against appellant.

Also, the tapes were not the only evidence against appellant; the testimony of the informant that she gave money to appellant on three different occasions and that in return he gave her a substance later determined to be cocaine is substantial evidence upon which a reasonable jury could conclude that the state had proven beyond a reasonable doubt that appellant engaged in drug trafficking. See *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus.

## APPELLANT'S *PRO SE* SUPPLEMENTAL BRIEF

Appellant filed his own brief in addition to the one filed by his appointed counsel. The first three arguments of the *pro se* brief are identical to those raised in his counsel's brief, and we reject his arguments for the reasons set forth above.

Appellant also claims that the prosecutor engaged in misconduct during his closing arguments by giving his opinion on appellant's guilt. Having reviewed the portions of the record identified by appellant as well as the entire transcript of the trial and closing argument, we must disagree with appellant and overrule his assignment of error. At no time did the state's counsel state his personal opinion of the appellant's guilt or innocence. He merely commented upon the evidence as he was permitted to do in closing argument.

Appellant's final assignment of error is not well taken, and it is therefore overruled.

## CONCLUSION

After reviewing the entire record in this case, we conclude that none of appellant's assignments of error are meritorious, and we overrule all of them. The judgment of the trial court is affirmed.

*Judgment affirmed.*

SUNDERMANN, J., concurs.

PAINTER, J., concurs separately.

PAINTER, Judge, concurring.

I concur in the decision; however, I am compelled to discuss why the admission of the transcript of a tape recording into evidence and into the jury room in this case was error under Evid.R. 1002, the best evidence rule, albeit harmless error under these facts.

Nineteen eighty-seven was the first time in Ohio that the use of typed transcripts *as a visual aid* to a jury *listening* to the playback of a tape-recorded communication was held to be a matter within the sound discretion of the trial court under the best evidence rule. *State v. Holmes* (1987), 36 Ohio App.3d 44, 521 N.E.2d 479. In *Holmes,* the rationale for permitting the transcript into the jury room was that the court reporter's version of the tapes played in the courtroom was almost unintelligible and that no material difference existed between the transcript and the tape. Therefore, the *Holmes* court held that under these conditions, the use of a transcript as a visual aid to a jury listening to the best evidence—the tape—was within the discretion of the trial court. *Id.,* citing *United States v. John* (C.A.8, 1975), 508 F.2d 1134, 1140–1141.

This limited and rational holding was loosely restated five years later, when the Supreme Court of Ohio concluded that "[w]here there are no 'material differences' between a tape admitted into evidence and a transcript given to the jury as a listening aid, there is no prejudicial error." *State v. Waddy* (1992), 63 Ohio St.3d 424, 445, 588 N.E.2d 819, 835, quoting *Holmes,* 36 Ohio App.3d at 50, 521 N.E.2d at 486.

This loose ruling presupposes that the transcript will be used *as a visual aid while the jury is listening to the tape.* It is essential to remember that up to this point, no one seriously would mistake the transcript for evidence, as such a belief is effectively blocked by the best evidence rule. Thus, the judge has a duty to admonish the jury in instances where a transcript is permitted in the jury room that it can only be used as an aid while the tape is played, and not as a substitute for the tape, which under the rule is the best evidence.

Following *Waddy,* many courts felt that transcripts could be freely distributed to jurors. For example, in *State v. Graves* (Oct. 6, 1994), Cuyahoga App. No. 66238, unreported, 1994 WL 547743, the court held that "[t]he use of transcripts of taped recordings as a listening aid is within the discretion of the trial court as long as the accuracy of the transcripts is not challenged," citing *Waddy* and *Holmes.* This is the holding of neither *Waddy* nor *Holmes.* In context, a transcript is permissible only when necessary as a listening aid, and only with an appropriate admonition—after all, the transcript is *not evidence.*

A better rendition of the rule used to determine when a transcript may be admitted into the jury room can be found in *State v. Rogan* (1994), 94 Ohio

App.3d 140, 640 N.E.2d 535. The *Rogan* court held that an authenticated transcript can be used by a jury as a listening aid while playing the tape of a recorded conversation, but the transcript cannot be admitted into evidence. The use of the transcript as a listening aid is permissible only after proper cautionary instructions have been given by the trial court. The court concluded that it is within the sound discretion of the trial court to adopt proper procedures to prevent the jury from using the transcript during deliberations. See, also, *State v. Burton* (May 6, 1994), Champaign App. No. 93–CA–20, unreported, 1994 WL 171225.

In the case at bar (1) the transcript was erroneously admitted into evidence; (2) the trial court erroneously failed to determine that the transcript was not an accurate reflection of the tape, although the court could have corrected this defect in the transcript; and (3) the trial court erroneously failed to admonish the jury that the transcript could be used only as a listening aid in conjunction with the tape, or to adopt other procedures to prevent the jury from using the transcript during deliberations.

Though I find these errors harmless under the facts of this case, such errors might not be harmless under different facts. Therefore, I must concur separately.