JOURNAL ENTRY AND OPINION
A jury found defendant Juan Smith guilty of one count of murder. In this appeal, he makes claims of ineffective assistance of counsel, prosecutorial misconduct, and maintains the evidence against him was neither sufficient nor credible.
We view the evidence in a light most favorable to the state. The murder victim died from a single gunshot wound that entered her chest and perforated her spinal cord. In addition to cocaine in her blood, the coroner found seminal fluid in her mouth and vagina. The victim's mother testified that the victim had a drug problem.
In the very early morning hours on the night of the murder, a young woman who lived near the scene had been arguing with her boyfriend to the point where she chased him out onto the street and through the neighborhood. The young woman soon tired, and began walking back to her house alone when she heard a gunshot. She picked up her pace to return home and physically bumped into a male she later identified as Willie Deloach. She excused herself and then heard a woman moaning, oh, God, oh, God. The young woman saw Deloach enter a car driven by another person and drive away. A few minutes later, the young woman saw Deloach, this time driving alone in the car, return and drive by the scene.
Another neighbor who lived near the scene said that she had risen from bed to go to work and heard a gunshot. She then heard a voice say, oh my God, help me. The neighbor called for an ambulance. As she stood near where the victim lay, a car pulled up and the driver asked what happened. Someone told the driver that a person had been shot. As this driver pulled up, the young woman became scared and ran into her house saying that the driver of the car was the killer. The young woman identified Deloach from a photographic array.
The police arrested Deloach and charged him with the victim's murder, but later dropped the charges against him after DNA evidence implicated defendant. At trial, Deloach testified for the state and said that he and defendant had been hanging around defendant's house for the better part of a day, drinking and smoking marijuana. A friend of theirs stopped by with a girl-friend, and asked if he could use a basement bedroom. Defendant agreed and in return asked if he could borrow the friend's car. Defendant and Deloach intended to rob some drug boys meaning they would drive around until they found drug dealers on the street whom they could rob. Deloach explained that he sold crack, but had been arrested recently and had no money.
The pair set out in the car and soon saw two boys as a target. They pulled over and put on hooded sweatshirts to hide their identity. Deloach said that he carried defendant's .38 revolver solely for the purpose of hitting a reluctant robbery victim. When the duo exited the car, the dope boys saw them and fled. Deloach said that he raised the gun and fired twice into the air in order to get them to stop, but the boys fled.
Defendant and Deloach went back to the car. Deloach gave defendant the gun. After driving for twenty minutes, defendant said that he wanted to find a prostitute. They soon came across the victim, and defendant offered her money for oral sex. Defendant and the victim went into the back seat, but the victim said that she wanted to move to another place. They drove a short ways and the victim again began to perform oral sex. Defendant could not ejaculate, so he told the victim to leave the car with him and go into the backyard of a nearby house. Deloach then turned the radio up and listened to music.
Deloach said that after about five minutes, he saw defendant running out of the yard and putting the gun into the waistband of his pants. Defendant stopped at the car and gave Deloach a dumbfounded look. Although defendant did not say anything, Deloach knew that something had gone wrong. Defendant then ran away.
Deloach started the car and then decided to turn around and see what happened. He drove by the house where defendant had engaged the victim and saw the victim's body on the ground. He returned to defendant's house. Defendant let him in the house and, in Deloach's words said, [defendant] said he was back there, she was giving him oral sex, and he said the bitch bit my dick. He said he pulled the gun out, and the gun just went off. The pair went into defendant's basement where they found the friend who loaned them the car sleeping with his girlfriend. Deloach said they told the friend what happened and the police arrived. The police arrested Deloach and found gunpowder residue on his arms.
Other witnesses said that defendant made certain statements to them that tended to implicate him in the victim's death. The friend who loaned the car to defendant and Deloach testified that on the night of the murder, defendant woke him and said, Dre, I think I just killed this bitch. I didn't mean to do it. Sometime after the murder, the friend and defendant were talking and defendant told the friend that he was receiving oral sex from the victim and the pistol was on his hip or something, and made a mistake, and it went off, he said, he didn't mean to do it. That same friend's sister claimed she overheard defendant tell another person that when he closes his eyes, he sees the victim holding her chest and looking at him.
 I
The first assignment of error complains the court committed plain error by permitting the victim's mother to present what amounted to victim impact evidence. The victim's mother generally testified to the victim's past employment as a school teacher and her lapse into drug use. The mother also identified a photograph of the victim taken some seven years before the murder. She denied knowing that the victim had become a prostitute to support her drug habit.
Defendant did not raise any objection to this testimony, so he is deemed to have waived all but plain error. See Crim.R. 52(B). When reviewing a claim of plain error, we examine the evidence properly admitted at trial and determine whether the jury would have convicted the defendant even if the error did not occur. State v. Slagle (1992),65 Ohio St.3d 597. Our plain error review is undertaken with the utmost caution, under exceptional circumstances and only to prevent a miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
Victim impact evidence is considered to be irrelevant and immaterial to the guilt or innocence of the accused, serving principally to inflame the passion of the jury. See State v. White (1968), 15 Ohio St.2d 146,239 N.E.2d 65. Despite the general prohibition against victim impact evidence, there are some circumstances in which victim impact evidence may be admissible for another purpose; for example, when the evidence illustrates the nature and circumstances of the crime. See State v. Lorraine (1993), 66 Ohio St.3d 414, 420-42; State v. Soke (1995),105 Ohio App.3d 226, 253.
The state presented the testimony of the victim's mother in order to give context to the murder. By showing the severity of the victim's drug habit, the state could make the necessary connection to show that the victim had prostituted herself in order to support that habit. This was an important connection for the state to make for it not only tended to support Deloach's testimony that defendant had picked up a prostitute, but further explained the presence of defendant's semen in the victim's mouth. Accepted for this limited purpose only, the mother's testimony would not have gone beyond the bounds of relevancy nor would it have been unduly prejudicial. We find the court would not have erred by permitting the testimony even had an objection been properly raised, so we overrule the first assignment of error.
 II In his second assignment of error, defendant complains the court abused its discretion by dismissing from the jury a juror who told the court that she previously worked with a state's witness. The witness, the young woman who identified Deloach as the person she bumped into shortly after hearing a gunshot, worked with the juror for one year. The juror assured the court in chambers that the witness was nothing more than a work acquaintance whom she had not seen for eighteen months. Despite the juror's representation that she could maintain her impartiality, the state asked that she be removed on grounds that this case is going to come down to the testimony of [the young woman], as far as demonstrating reasonable doubts. Defendant maintains that under similar circumstances reviewing courts have held that it is not improper for a court to permit a juror to remain on the panel despite knowing a victim, so what's good for the goose is good for the gander.
In Petro v. Donner (1940), 137 Ohio St. 168, paragraph one of the syllabus states that the right to due process mandates the accused be tried before a fair and impartial jury on conclusions reached from evidence and argument in open court not by outside influence. Crim.R. 24(B)(9) provides that no juror shall be disqualified by reason of a previously formed or expressed opinion as to the guilt or innocence of the accused if the court is satisfied from examination of the juror or from other evidence that the juror will render an impartial verdict according to the law and evidence submitted to the jury at trial. The decision to remove a juror who may exhibit potential bias is subject to review only for an abuse of discretion. See State v. Phillips (1995),74 Ohio St.3d 72; State v. Crawford (1996), 117 Ohio App.3d 370, 374. It may be an abuse of discretion to dismiss a juror if the court does so without factual support, or for a legally irrelevant reason. See United States v. Register (C.A.11, 1999), 182 F.3d 820.
Although the juror insisted that she knew the witness only as a work acquaintance and could maintain her impartiality, we cannot find the court abused its discretion by dismissing the juror. The court noted that even though the juror had not seen the witness in over a year, she immediately recognized the witness. The court could, in an abundance of caution, decide that the impartiality of the juror could be compromised. The second assignment of error is overruled.
 III
The third assignment of error complains that the state committed prosecutorial misconduct when it ordered a witness who would be providing exculpatory evidence to leave before defense counsel had an opportunity to speak with the witness. On the Friday of trial, one of the state's witnesses testified to overhearing a conversation between defendant and an acquaintance to the effect that when defendant closes his eyes he still sees the victim clutching her chest and looking at him. A police detective located the acquaintance and learned from him that he denied hearing defendant make any such statement. The following day, defense counsel interviewed the witness and learned from him that the state told the detective to remove the witness before defense counsel could find him. Defendant maintains this violated the state's duty to divulge exculpatory evidence.
The Supreme Court of the United States has held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution. Brady v. Maryland (1963) 373 U.S. 83, 87; see, also, State v. Johnston (1988), 39 Ohio St.3d 48, 60. This duty is set forth in Crim.R. 16(B)(1)(f), which requires the state, upon motion, to divulge prior to trial all evidence that is favorable to the defendant and material either to guilt or punishment. The duty under this rule is a continuing duty. See Crim.R. 16(D); State v. Wilson (1987),30 Ohio St.3d 99.
In United States v. Bagley (1985), 473 U.S. 667, 682, the United States Supreme Court held that in determining whether the prosecutor improperly withheld evidence favorable to the defendant, a court shall find the evidence material only in instances when there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding probably would have been different. Suppression by the prosecution of exculpatory evidence violates due process only where that evidence creates a reasonable doubt as to the guilt of the accused. Wagster v. Overberg (6th Cir. 1977), 560 F.2d 735, 739. The mere possibility that the evidence might have helped the defense does not establish "materiality." Wagster, 560 F.2d at 741.
It is certain from this record that the state knew on Friday that the witness had exculpatory evidence yet did not inform the defense. The defense contacted the witness on its own and learned on Saturday that the witness denied overhearing defendant make inculpatory statements. As of the following Monday, it appeared the state had not informed the defense of the witness' exculpatory story as the trial reconvened.
The state should have informed the defense about the witness' testimony immediately. By Friday afternoon, in the midst of trial, it had knowledge of an exculpatory witness. As of the following Monday morning when trial resumed, the state had still not informed defense counsel about the witness. This was a violation of defendant's right to ongoing discovery from the state.
Nonetheless, there is no prejudice sufficient to warrant a new trial because we cannot say that had the state timely informed the defense of the witness' whereabouts the outcome of the trial would have been different. Defense counsel exercised diligence in locating and interviewing the witness on his own just one day after the state located the witness. This brief delay amounted to just hours and had no discernable impact on the defense case. While we do not condone the state's actions, we are constrained to say that there is no demonstration of prejudice on this record.
As an additional argument, defendant claims the state engaged in misconduct when, in its closing argument, it referred to Deloach's testimony as a smokescreen. This argument is not independently argued, so we disregard it. See App.R. 12(A)(2). The third assignment of error is overruled.
 IV
The fourth assignment of error is that counsel was ineffective for failing to object to the admission of victim impact evidence. As our discussion of the first assignment of error showed, the court did not err by admitting testimony from the victim's mother; hence, counsel could not have failed any essential duty by failing to object. The fourth assignment of error is overruled.
 V
The fifth assignment of error complains the jury lacked sufficient evidence to find defendant guilty of murder. Defendant argues that the only evidence against defendant was the presence of his seminal fluid in the victim's mouth, and this is not enough to show he acted purposefully to cause the victim's death.
When reviewing a claim of insufficient evidence to support a conviction, we look at the evidence in a light most favorable to the state and determine whether any reasonable trier of fact could find the essential elements of the offense proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259.
Not only did the state present compelling evidence showing defendant engaged in sexual relations with the victim shortly before her death, it presented evidence from three different witnesses who said that defendant admitted killing the victim because he did not have the money to pay her. Reasonable minds could have found the state proved the essential elements of murder. The fifth assignment of error is overruled.
 VI
In his sixth assignment of error, defendant maintains that the verdict is against the manifest weight of the evidence primarily because the state had originally charged Willie Deloach with the murder, but dropped those charges against him after the DNA evidence showed the presence of defendant's semen in the victim's mouth. Defendant argues that Deloach was the better suspect as he had gunpowder residue on his hands and was seen walking at the scene of the murder just moments after the gunshot.
To reverse a conviction on the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice. See State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
The defense's strongest point was an eyewitness' identification of Deloach walking at the scene. She not only made the identification with accuracy, but told others on the scene so that when Deloach drove by the scene just moments later they testified that the car driven by Deloach carried the murderer.
While the eyewitness gave specific testimony to establish Deloach's presence at the scene of the murder after-the-fact, the physical evidence likewise linked defendant to the victim at the time of her death. While the coroner could not pinpoint when defendant's seminal fluid entered the victim's mouth, he did say that it probably entered her mouth sometime either just before, or contemporaneous with the shooting.
Defendant also incorrectly points to the presence of gunshot residue on Deloach's arms, saying this was physical evidence to show he fired the fatal shot. This was not evidence that Deloach fired the fatal shot — only that he recently fired a gun. Deloach explained that he fired defendant's gun earlier in the evening in an attempt to scare drug boys he and defendant were trying to rob. The jury could credit this testimony as being consistent with other facts brought forward at trial, particularly defendant's admissions made after the fact which showed that he fired the shot that killed the victim. Moreover, the absence of any gunshot residue on defendant would not have been significant since, unlike Deloach, he was not arrested on the night of the murder, so it would have been unlikely that any residue would remain.
There were inconsistencies in Deloach's testimony; for example, he testified that he sat in the car with the radio playing loudly as defendant engaged the victim, so loud in fact that he did not hear a gunshot. None of the people near the scene testified that they heard a car radio. The defense fully exploited these inconsistencies, and vigorously exposed the witnesses' lack of credibility. The jury has the sole job of determining the credibility of the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230. They were obviously impressed with the physical evidence linking defendant to the victim, and we cannot say the jury lost its way in relying on that fact. The sixth assignment of error is overruled.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
DIANE KARPINSKI, P.J., PATRICIA A. BLACKMON, J., CONCUR.
 ___________________________ JOHN T. PATTON, JUDGE