DECISION.
A jury found defendant-appellant Margo Miller guilty of the murder of her two-year-old granddaughter, Nykael Presswood. The trial court ordered Miller to serve a fifteen-year-to-life sentence. Miller now appeals.
 In her first assignment of error, Miller argues that she was prejudiced by the trial court's failure to swear in all of the prospective jurors until several of them had been questioned in voir dire. In State v. Glaros,[1]
the Supreme Court of Ohio held that where a court failed to comply with R.C. 2945.27's requirement that oaths or affirmations be administered to prospective jurors before voir dire, the defendant would not be entitled to a new trial if he failed to call the error to the attention of the court.
In this case, shortly after the trial court began to conduct its examination of the prospective jurors, it administered to them the oath required by R.C. 2945.27. Miller failed to object to the court's delayed administration of the oath. Therefore, Miller's argument must be reviewed under the plain-error standard. Plain error exists only when it is clear that the verdict would have been otherwise but for the alleged error.[2]
In this case, the outcome of the trial would not have been different had the court administered the oath before beginning its examination of the prospective jurors. The court's questions were simply preliminary in nature, and only three prospective jurors had given responses before the court swore in the panel. As a fourth prospective juror began to respond to one of the court's questions, the court administered the oath. None of the three prospective jurors who had responded to the court's background questions regarding prior jury service participated in the deliberations in Miller's case: one was excused for cause, one was dismissed after the jury panel had been fully constituted, and the last prospective juror was seated as an alternate, but was dismissed before deliberations. Miller's first assignment of error is overruled.
In her second assignment of error, Miller argues that the trial court erred by allowing the jury to review a transcript of her tape-recorded confession, where the transcript had not been admitted into evidence. Detective Robert Randolph of the Cincinnati Police Division's homicide unit testified that Miller had given a tape-recorded interview about her attack on her granddaughter. He testified that the tape recording was an accurate recording of the interview. Before the tape recording was played before the jury, the state provided the jurors with transcripts in order to aid them as they listened to the recording. The court, noting that the defense had no objection, allowed the jurors to receive the transcripts.
After the jury had begun its deliberations, the court commented that the jurors had asked for the transcript of Miller's interview. Counsel for both the state and the defense agreed that the jury should be allowed to receive copies of the transcript during deliberations.
In State v. Waddy,[3] the Supreme Court of Ohio considered the use of transcripts to assist the jury in listening to a tape recording. In that case, the court held that where there are no material differences between a tape admitted into evidence and a transcript given to the jury as a listening aid, there is no prejudicial error. Furthermore, other courts have held that when the defendant is not prejudiced by the admission of transcripts into evidence, any error in giving them to the jury is harmless.[4]
In this case, Detective Randolph testified that the transcript was a true and accurate account of the tape-recorded interview with Miller. Miller has failed to demonstrate that she was prejudiced by the jury's use of the transcript as a listening aid. Furthermore, any error in allowing the jury to use the transcript during deliberations was harmless in view of the substantial independent evidence of guilt.[5]
Therefore, Miller's second assignment of error is overruled.
In her third assignment of error, Miller argues that it was plain error for the trial court to allow her to be tried in jail clothing without issuing a cautionary instruction. In Estelle v. Williams,[6] the United States Supreme Court stated that a juror's judgment might be affected by a defendant's appearance in prison clothing, but it refused to establish a bright-line rule that a conviction must be overturned when an accused wore jail clothing at trial. "Instead, the inquiry must focus on whether the accused's appearance before the jury in jail clothes was compelled."[7]
The Estelle court stated,
 The reason for this judicial focus upon compulsion is simple; instances frequently arise where a defendant prefers to stand trial before his peers in prison garments. The cases show, for example, that it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury.[8]
 In this case, the record fails to demonstrate that Miller was compelled to wear jail clothing during her trial. Furthermore, where the decision to allow her to remain in that clothing may have been a sound tactical decision on the part of defense counsel, Miller has failed to demonstrate that prejudice resulted from wearing the clothing. Accordingly, Miller's third assignment of error is overruled.
In her fourth assignment of error, Miller alleges that the trial court erred by allowing into evidence gruesome and cumulative photographs of the victim. The admission or exclusion of evidence is generally committed to the sound discretion of the trial court.[9] Gruesome photographs are admissible at trial as long as their probative value outweighs the danger that the accused will be unfairly prejudiced.[10]
In this case, the chief deputy coroner identified several photographs taken during the victim's autopsy. Miller argues that the photographs were "gruesome and repetitive by needlessly `piling on' in quantity similar photos [sic] of the victim since there was no issue that the victim had been killed by significant forceful trauma." But one of the issues in this case was whether Miller had knowingly caused the death of the victim. The coroner identified several photographs, each of which depicted separate injuries to the baby. When defense counsel objected to one of the photographs as being particularly gruesome, but the trial court determined that the photograph was not unduly repugnant and did not create "great emotion." Furthermore, the court determined that the photograph was necessary to depict the particular wounds identified by the coroner.
Under the circumstances, the trial court's decision to admit the photographs was not so arbitrary, unreasonable or unconscionable as to be an abuse of discretion.[11] Therefore, Miller's fourth assignment of error is overruled.
In her fifth assignment of error, Miller argues that the trial court erred by permitting evidence of other acts in violation of Evid.R. 404(B), thereby prejudicing her right to a fair trial. Miller complains that the court allowed the prosecutor to elicit other-acts evidence from Miller's daughter, Moneek Presswood, the mother of the victim. When asked by the prosecutor whether Miller had ever abused her and her siblings as children to the extent that they suffered bruises and broken bones, Presswood denied it. Also, Presswood denied having told an interviewer from the court clinic that her mother had a history of anger episodes. The prosecutor also asked Presswood if she knew whether Miller had any drug addictions, and Presswood admitted that Miller had a problem with crack cocaine.
Evid.R. 404(B) prohibits the introduction of prior crimes, wrongs, or acts committed by a person in order to show that he or she acted in conformity with them. In this case, defense counsel made no objection to the testimony, so we review the admission of the evidence for plain error.[12]
No evidence of prior acts of child abuse by Miller came into evidence through Presswood's testimony, because she denied the occurrence of any abuse. Furthermore, in his opening statement, defense counsel had referred to the fact that Miller had an addiction to crack cocaine, and that, within a day or two of the victim's death, Miller had used crack cocaine. Accordingly, we cannot say that the outcome of the trial would have been different absent evidence of the drug abuse.[13] Miller's fifth assignment of error is overruled.
In her sixth assignment of error, Miller claims that she was denied the effective assistance of counsel. To prevail on her claim, Miller must demonstrate that her counsel "made errors so serious that counsel was not functioning as the `counsel guaranteed by the Sixth Amendment.'"[14]
She must also show that the deficient performance prejudiced her.[15]
Prejudice occurred if Miller "was denied some substantive or procedural right that made the `trial unreliable or the proceeding fundamentally unfair.'"[16] It is difficult to demonstrate ineffective assistance of counsel because the defendant must overcome the "strong presumption that counsel's conduct f[ell] within the wide range of reasonable professional assistance," and that the attorney was competent.[17]
Miller complains that her attorney failed to file a motion to suppress her statement. Where there are no grounds for the suppression of evidence, a defense attorney has no duty to file a motion to suppress evidence. Where the record contains no evidence that would justify the filing of a motion to suppress, the appellant has not met his or her burden of proving that defense counsel violated an essential duty by failing to file the motion.[18]
In this case, there is no evidence that the police coerced Miller into making a statement. The record demonstrates that police officers advised Miller of her constitutional rights, and that she signed a written waiver to that effect. The officers had recorded on the rights form Miller's age and that the last grade she had completed was ninth grade. Miller indicated that she could read and write, and that she had taken no drugs or alcohol in the twenty-four-hour period prior to her waiver. Furthermore, Miller said that she understood her rights and that she had no questions.
Because the record demonstrates that Miller's will was not overborne by coercive police conduct, we hold that Miller has failed to meet her burden to show that her lawyer's decision not to file a motion to suppress did not fall within the realm of an appropriate trial decision.[19]
Miller also complains that defense counsel told the jury in opening statement that she would testify and that she was addicted to crack cocaine and alcohol, despite the fact that Miller did not testify at trial. Defense counsel may have mentioned the drug and alcohol addiction to induce sympathy or to prevent the jury from finding the mens rea element of the crime. Furthermore, following the opening statement, defense counsel may have advised Miller that she should not testify in light of Miller's outbursts throughout the trial. We cannot say that, under the circumstances, it was unreasonable for counsel to advise Miller not to testify.[20]
Miller next argues that defense counsel failed to object to her wearing of a jail uniform during the trial. In Estelle, supra, the United States Supreme Court commented on a similar argument:
 Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system.[21]
 We decline "to second-guess trial counsel's decision to allow his client to stand trial in prison garb because this decision has been acknowledged to be a strategic one."[22] Miller has failed to meet the first prong of the Strickland test in this respect.
Miller further complains that her lawyer failed to object to the admission of numerous autopsy photographs. As we noted earlier, defense counsel objected to one photograph as being gruesome, but the trial court allowed it. We cannot say that defense counsel's failure to object to the remaining photographs was ineffective because the evidence was admissible at trial.[23]
Miller also complains that defense counsel failed to request a jury instruction on involuntary manslaughter. It is ordinarily a matter of trial strategy whether to seek to have the jury instructed on a lesser-included offense or to avoid such an instruction in the hope of achieving a complete acquittal. Under the circumstances, we cannot say that counsel was deficient in failing to request the manslaughter instruction.
Miller next alleges that defense counsel was ineffective for failing to object to various instances of prosecutorial misconduct during the state's closing argument. The record reveals that defense counsel objected and moved for a mistrial after the prosecution commented on Miller's proceeding to trial, but the trial court overruled the motion. In light of these actions by defense counsel, we cannot say that his performance was deficient. Accordingly, Miller's sixth assignment of error is overruled.
In her seventh assignment of error, Miller argues that the trial court erred by allowing the state to deliver a prejudicial closing argument. Miller complains that the state denigrated her right to a jury trial, called her a liar, and vouched for the credibility of the police.
Generally, prosecutorial misconduct will not provide a basis for overturning a criminal conviction, unless, on the record as a whole, the misconduct can be said to have deprived the defendant of a fair trial.[24] The test for whether prosecutorial misconduct mandates reversal is whether remarks or actions were improper, and, if so, whether they prejudicially affected the substantial rights of the accused.[25]
"In our adversarial system, prosecutors are not only permitted but also encouraged to argue fervently for conviction."[26] And, in displaying that fervor in closing argument, the prosecution has "wide latitude" to argue as to what the evidence has shown and what reasonable inferences may be drawn from it.[27]
The prosecutor's comments about Miller's lying were based upon evidence presented at trial that Miller had fabricated a story about the cause of her granddaughter's injuries and had been clever enough to repeat the fabrication to various people before her final admission to the crime. Miller had staged a crime scene to protect herself from culpability, rather than seeking immediate help for the child. Basically, the prosecutor was arguing that the victim's death was no accident, and that Miller was aware of her conduct. The prosecutor argued that Miller had knowingly caused serious physical harm to the victim, in that she was aware that her conduct would probably cause a certain result. We find nothing improper in the prosecutor's comments upon the evidence. Furthermore, we note that the record fails to demonstrate Miller's complaint that the prosecutor improperly vouched for the police officers that testified at trial.
 Defense counsel objected and moved for a mistrial after the prosecutor made the following comment:
 So why are we here? I'm still trying to find that out, other than the fact she is entitled to a trial. You know what, we're now entitled to a guilty verdict. Some people own up to their actions, take responsibility for what they have done, no matter how criminal their behavior is; but other people, no, they have to be dragged kicking and screaming to the reality that they created.
 These statements by the prosecutor were clearly an unfair comment on the defendant's fundamental right to a jury trial. Although the comments were improper, our analysis does not end there. We must determine whether the remarks were so prejudicial as to deny Miller a fair trial.[28] To be prejudicial, "[t]he remarks must have `so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[29] The improper conduct "should be assessed within the context of the entire case, and more particularly the entire closing argument to determine whether it was prejudicial."[30]
While the prosecutor's comments on the fact that Miller was proceeding to trial were improper, we hold that the remarks were not so prejudicial as to deny her a fair trial, in light of the overwhelming evidence of Miller's guilt and of the prosecutors' otherwise proper conduct throughout the trial. Accordingly, we overrule Miller's seventh assignment of error.
In her eighth assignment of error, Miller complains that the jury's guilty verdict was against the manifest weight of the evidence because the state failed to prove that she had knowingly caused serious physical harm to the victim. To reverse a trial court's judgment on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[31]
In this case, the record demonstrates that Miller caused the death of the victim as a proximate cause of her commission of felonious assault. Miller admitted to police that she had beaten her grandchild. As a result of Miller's attack, the child sustained a laceration to her liver, a torn artery and portal vein supplying the liver, a torn bile duct, and a rib fracture, as well as multiple bruises and scratches on her face and body. The jury did not lose its way in finding Miller guilty of murder. Accordingly, Miller's eighth assignment of error is overruled.
We affirm the judgment of the trial court.
Judgment affirmed.
Hildebrandt, P.J., and Gorman, J., concur.
[1] (1960), 170 Ohio St. 471, 166 N.E.2d 379.
[2] See State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804.
[3] (1992), 63 Ohio St.3d 424, 588 N.E.2d 819.
[4] See, e.g., State v. Rogan (1994), 94 Ohio App.3d 140, 163,640 N.E.2d 535 (harmless error in admitting transcripts if substantial rights not affected); In Re Garrett (July 31, 1996), 1st Dist. No. C-950243 (no prejudice where transcript was substantially accurate and case was tried to judge, not jury).
[5] See State v. Crawford (1996), 117 Ohio App.3d 370,690 N.E.2d 910.
[6] (1976), 425 U.S. 501, 96 S.Ct. 1691.
[7] State v. Dorsey (Apr. 23, 1998), 8th Dist. No. 72177, citingEstelle, supra.
[8] Estelle, supra, at 508, 96 S.Ct. 1691, citing Anderson v. Watt
(C.A.10, 1972), 452 F.2d 881, 882, and Watt v. Page (C.A.10, 1972),452 F.2d 1174, 1176, certiorari denied (1972), 405 U.S. 1070, 92 Ct. 1520.
[9] See State v. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus.
[10] See State v. Maurer (1984), 15 Ohio St.3d 239, 473 N.E.2d 768.
[11] See State v. Smith (1997), 80 Ohio St.3d 89, 108-109,684 N.E.2d 668; State v. Morales (1987), 32 Ohio St.3d 252, 257-258,513 N.E.2d 267; State v. Adams (1980), 62 Ohio St.2d 151, 157,404 N.E.2d 144.
[12] See State v. Long, supra.
[13] See id.
[14] See Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052.
[15] See id.
[16] State v. Combs (1994), 100 Ohio App.3d 90, 101, 652 N.E.2d 205, quoting Lockhart v. Fretwell (1993), 506 U.S. 364, 370,113 S.Ct. 838.
[17] See State v. Hamblin (1988), 37 Ohio St.3d 153, 155-156,524 N.E.2d 476.
[18] Kimmelman v. Morrison (1986), 477 U.S. 365, 106 S.Ct. 2574; Statev. Flors (1987), 38 Ohio App.3d 133, 528 N.E.2d 950; State v. Gibson
(1980), 69 Ohio App.2d 91, 430 N.E.2d 954.
[19] See In re Garrett, supra; see, also, State v. Perkins (May 28, 1999), 1st Dist. No. C-971032; State v. Flors, supra.
[20] See, e.g., State v. Pinnock (May 14, 1997), 1st Dist. No. C-950882.
[21] Estelle, supra, at 512, 96 S.Ct. 1691.
[22] State v. Kachovee (Oct. 31, 2001), 4th Dist. No. 00CA2745.
[23] See State v. Richey (1992), 64 Ohio St.3d 353, 595 N.E.2d 915.
[24] See State v. Lott (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293, certiorari denied (1990), 498 U.S. 1017, 111 S.Ct. 591; State v. Maurer
(1994), 15 Ohio St.3d 239, 266, 473 N.E.2d 768; State v. Alfieri (1998),132 Ohio App.3d 69, 724 N.E.2d 477, discretionary appeal not allowed (1999), 85 Ohio St.3d 1477, 709 N.E.2d 849.
[25] See State v. Lott, supra, at 165, 555 N.E.2d 293; State v. Smith
(1984), 14 Ohio St.3d 13; 470 N.E.2d 883; State v. Smith (2000),87 Ohio St.3d 424, 442, 721 N.E.2d 93; State v. Hart (1994),94 Ohio App.3d 665, 641 N.E.2d 755, discretionary appeal not allowed (1994), 70 Ohio St.3d 1446, 639 N.E.2d 114.
[26] State v. Hart, supra, at 671, 641 N.E.2d 755.
[27] See id., citing State v. Stephens (1970), 24 Ohio St.2d 76,82, 263 N.E.2d 773.
[28] See State v. Willard (2001), 144 Ohio App.3d 767,761 N.E.2d 688.
[29] See State v. Hart, supra, at 676, 641 N.E.2d 761, citing Donnellyv. DeChristoforo (1974), 416 U.S. 637, 643, 94 S.Ct. 1868.
[30] Id.
[31] See State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541.