[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY. {¶ 1} This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
 {¶ 2} Defendant-appellant, Tracy Vaulx, appeals convictions for trafficking in marijuana pursuant to R.C. 2925.03(A)(1) and possession of marijuana pursuant to R.C. 2925.11(A). The trafficking was based on one hundred pounds of marijuana found in the trunk of a car owned by Tommie Donnerson. Donnerson and Vaulx, his passenger, were arrested following an attempted sale of marijuana to an undercover agent. The possession conviction was the result of the search of a residence that police had observed Donnerson and Vaulx leaving shortly before the attempted sale.
 {¶ 3} Vaulx presents three assignments of error for review. In his first assignment of error, he contends that the trial court erred in overruling his motion to suppress evidence. He argues that mere presence at a drug transaction is not sufficient to provide probable cause to arrest. Therefore, his arrest was unlawful, and any evidence obtained as the result of his arrest should have been suppressed. This assignment of error is not well taken.
 {¶ 4} An arrest without a warrant is constitutionally valid if, at the moment the arrest is made, the arresting officer has probable cause to make it. Beck v. Ohio (1964), 379 U.S. 89, 85 S.Ct. 223; State v.Deters (1998), 128 Ohio App.3d 329, 714 N.E.2d 972. A police officer has probable cause for an arrest when the officer has facts and circumstances within his or her knowledge sufficient to warrant a prudent person in believing that the defendant is committing or has committed an offense.State v. Heston (1972), 29 Ohio St.2d 152, 280 N.E.2d 376; Cincinnati v.Wolfe, 1st Dist. Nos. C-010303 and C-010304, 2001-Ohio-3916. It is a common-sense, practical threshold that gives due consideration to the perceptions and actions of law enforcement officers and requires less evidence than would be necessary to support a conviction. State v.Bradley (1995), 101 Ohio App.3d 752, 656 N.E.2d 721.
 {¶ 5} While mere proximity to the scene of suspected criminal activity does not alone give rise to probable cause for an arrest, Statev. Davis (2000), 140 Ohio App.3d 659, 748 N.E.2d 1160; State v. Johnson
(Feb. 25, 2000), 1st Dist. No. C-990042, the facts of this case demonstrate more than mere proximity. In arranging the transaction, the undercover officer had spoken on the telephone numerous times with Donnerson, who often referred to his supplier in Mississippi. Donnerson told the officer that he was bringing his partner with him for protection. The officer asked Donnerson if the passenger in his car was "his boy from Mississippi," and the officer testified that Donnerson replied, "Yeah." After expressing concern about a surveillance van and stating that he could not show the officer the drugs, Donnerson walked to his car numerous times to consult with his passenger, whom the officer heard state, "Let's go."
 {¶ 6} Under the circumstances, the officers involved in the operation had sufficient facts and circumstances within their knowledge to warrant a prudent person in believing that the passenger, who was later identified as Vaulx, was an active participant in the drug transaction. Consequently, they had probable cause to arrest him without a warrant. The trial court did not err in overruling Vaulx's motion to suppress, and we overrule his first assignment of error.
 {¶ 7} In his second assignment of error, Vaulx contends that the evidence was insufficient to support his convictions. He argues that the state showed only that he was present in Donnerson's car during the transaction. He claims that the state did not present any evidence to show that he had possessed any marijuana or that he had actually participated in the attempted sale of marijuana.
 {¶ 8} Accomplices to a crime may be punished as if they were the principal offenders. State v. Coleman (1988), 37 Ohio St.3d 286,525 N.E.2d 792; State v. Cedeno (Oct. 23, 1998), 1st Dist. No. C-970465. A person aids and abets the principal offender when that person supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime, and shares the principal's criminal intent. Mere association with the principal offender or presence at the scene of the crime is not sufficient. The state must establish that the offender took some affirmative action to assist, encourage or participate in the crime. Participation can be inferred from presence, companionship or conduct before and after the offense is committed. Statev. Johnson, 93 Ohio St.3d 240, 2001-Ohio-1336, 754 N.E.2d 796; State v.Terrell, 1st Dist. No. C-020194, 2003-Ohio-3044.
 {¶ 9} The state presented sufficient circumstantial evidence to support the inference that Vaulx was an active participant in the drug transaction and that he did not just happen to be present at the scene with Donnerson. The jury could have reasonably concluded from the evidence presented that Vaulx was the person Donnerson referred to as his "boy from Mississippi," i.e. his drug supplier.
 {¶ 10} Vaulx also argues that the state did not prove that he had possession of the marijuana in Donnerson's car or the marijuana found in the residence. Possession can be actual or constructive. Constructive possession occurs when the accused exercises dominion and control over an object, even though that object may not be within the accused's immediate physical possession. State v. Wolery (1976), 46 Ohio St.2d 316,348 N.E.2d 351; State v. Williams (1996), 117 Ohio App.3d 488,690 N.E.2d 1297. Possession may not be inferred from mere access, but "readily usable drugs in close proximity to an accused may constitute sufficient circumstantial evidence to support a finding of constructive possession." State v. Murrell, 1st Dist. No. C-020333, 2003-Ohio-2068, quoting State v. Scalf (1998), 126 Ohio App.3d 614, 710 N.E.2d 1206.
 {¶ 11} As to the trafficking offense, the evidence showed that Vaulx aided and abetted Donnerson, who had the keys to the trunk in which the marijuana was located and who exercised dominion and control over the marijuana. As to the possession offense, in tapes of telephone conversations with the undercover officer, Donnerson often referred to his suppliers in Mississippi. Vaulx, who was from Mississippi, accompanied Donnerson to the attempted drug sale, and officers observed Vaulx greeting Donnerson at the residence where the marijuana was found immediately before he rode with Donnerson to meet the undercover officer. When the officer asked if Vaulx was Donnerson's "boy from Mississippi," Donnerson replied that he was. Donnerson stated that he had brought Vaulx along with him because he was observant, and he consulted with Vaulx upon noticing a camera aimed at them from inside a surveillance van.
 {¶ 12} Following Vaulx's arrest, police found a key to the residence on his person, which they used to open the lock on the front door. At the residence, they found evidence of a large drug operation and a large amount of marijuana that had been packaged for sale, some of it in a manner similar to that found in the trunk of Donnerson's car. Upon being questioned, Vaulx, who was unaware that police officers had been following him and Donnerson and that they had seen him at the residence, denied ever being there. Under the circumstances, the state presented sufficient circumstantial evidence to support the inference that Vaulx exercised dominion and control over the marijuana found in the residence.
 {¶ 13} Our review of the record shows that the state's evidence, when viewed in a light most favorable to the prosecution, could have convinced a rational trier of fact that Vaulx aided and abetted Donnerson in knowingly selling or attempting to sell marijuana. Therefore, the evidence was sufficient to support his conviction for trafficking in marijuana. See State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492;State v. Pickett (1996), 108 Ohio App.3d 312, 670 N.E.2d 576; State v.Harriston (1989), 63 Ohio App.3d 58, 577 N.E.2d 1144.
 {¶ 14} Further, the state's evidence, when viewed in a light most favorable to the prosecution, could have convinced a rational trier of fact that Vaulx knowingly possessed, obtained, or used the marijuana discovered in the residence. Therefore, the evidence was sufficient to support his conviction for possession of marijuana. See Jenks, supra;Murrell, supra. Accordingly, we overrule Vaulx's second assignment of error.
 {¶ 15} In his third assignment of error, Vaulx contends that the trial court erred in allowing the jury to review transcripts of audiotapes that contained a material difference from what was said on the tapes. The record shows that while the audiotapes were played, the court allowed the jury to follow along using transcripts prepared by the undercover officer who had been involved in the drug transaction. In a crucial part of the tapes, the undercover officer referred to the passenger in Donnerson's car and asked if he was his "boy from Mississippi." The transcript contained the response "yeah," and the officer testified at trial that Donnerson had said "yeah." Vaulx contended that, on the tape itself, Donnerson's response was inaudible. The trial court listened to the tape several times and concluded that Donnerson's response was unclear. Nevertheless, it ultimately allowed all the tapes, including the disputed one, to go to the jury.
 {¶ 16} To be admissible, a tape recording must be authentic, accurate and trustworthy. The decision whether to admit tape recordings containing inaudible portions lies within the trial court's discretion.State v. Coleman, 85 Ohio St.3d 129, 1999-Ohio-258, 707 N.E.2d 476. Further, a trial court does not err in allowing the jury to use a transcript as a listening aid as long as there are no material differences between the tape and the transcript. State v. Waddy (1992),63 Ohio St.3d 424, 588 N.E.2d 819; State v. Crawford (1996),117 Ohio App.3d 370, 690 N.E.2d 910.
 {¶ 17} The record shows that there were no material differences between the transcripts and the tapes until the disputed portion, which was in the very last tape. Upon discovering the problem, the court collected the transcripts and had the jury listen to the tape without them. It instructed the jurors repeatedly that the tapes themselves were the evidence and that the transcripts were only an aid. We must presume that the jury followed the trial court's instructions. State v. Heard
(Aug. 13, 1999), 1st Dist. No. C-980443. Further, the jury was aware from early in the trial that the undercover officer had prepared the transcripts himself. Under the circumstances, we cannot hold that the trial court committed prejudicial error.
 {¶ 18} Further, the undercover officer, who was present for the actual conversation with Donnerson, testified that Donnerson had replied to his question in the affirmative when he asked if Vaulx was his "boy from Mississippi." Vaulx was able to thoroughly cross-examine the officer. The officer's testimony was direct evidence of what had occurred during the transaction, independent of the tapes, and was sufficient to support the inference that Vaulx was an active participant in the deal. See Coleman, supra; Crawford, supra. Consequently, we cannot hold that Vaulx was prejudiced by the error in the transcript or by the admission of the tapes. Accordingly, we overrule his third assignment of error and affirm his convictions.
 {¶ 19} Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Doan, P.J., Hildebrandt and Painter, JJ.