The prior decision in this case, State v. Fitzgerald,148 Ohio App.3d 205, 2002-Ohio-2903, having been vacated upon reconsideration, State v. Fitzgerald (July 26, 2002), 9th Dist. No. 20866, unreported journal entry, the prior decision is hereby replaced with this decision and journal entry.
{¶ 1} Defendant-Appellant Rashid K. Fitzgerald has appealed from an order of the Summit County Court of Common Pleas that denied his motion to suppress evidence. This Court affirms.
 I
{¶ 2} Appellant was indicted on one count of trafficking in cocaine in violation of R.C. 2925.03(A)(2); one count of possession of cocaine in violation of R.C. 2925.11(A); one count of aggravated possession of drugs in violation of R.C. 2925.11(A); and one count of possession of marijuana in violation of R.C. 2925.11(A). Appellant entered a plea of not guilty to all counts of the indictment and filed a motion to suppress the evidence seized during his arrest.
{¶ 3} After a hearing on the matter, the trial court denied Appellant's motion. Appellant thereafter pleaded no contest to the count of possession of cocaine, and the remaining three counts of the indictment were dismissed. The trial court found Appellant guilty of the offense of possession of cocaine, and sentenced him to a definite term of two years of incarceration and ordered the forfeiture of $534 in cash seized by the police. Appellant has timely appealed from the order denying his motion to suppress, asserting one assignment of error.
 II Assignment of Error {¶ 4} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS WHERE, THE ENCOUNTER WAS NOT `CONSENSUAL' AND WHERE NEITHER `REASONABLE, ARTICULABLE SUSPICION OF CRIMINAL ACTIVITY' NOR `PROBABLE CAUSE' EXISTED."
{¶ 5} In his sole assignment of error, Appellant has argued that the trial court erred in denying his motion to suppress evidence seized at the time of his arrest. Appellant has contended that the police did not have sufficient justification to detain him based on the events preceding his arrest, and that the contraband subsequently found on his person was unconstitutionally obtained.
{¶ 6} An appellate court reviews de novo whether an officer has reasonable suspicion or probable cause to make a warrantless seizure.State v. Bing (1999), 134 Ohio App.3d 444, 448, citing Ornelas v.United States (1996), 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911. This Court accepts the factual determinations of the trial court if they are supported by competent, credible evidence, and without deference to the trial court's conclusions will determine "whether, as a matter of law, the facts meet the appropriate legal standard." State v. Curry (1994),95 Ohio App.3d 93, 96. In the proceedings below, however, the trial court made no factual findings in connection with its order denying Appellant's motion to suppress. Accordingly, this Court relies on the testimony transcribed from the hearing and the undisputed facts that are supported by the record in determining whether the trial court reached the proper result.
{¶ 7} At the suppression hearing, Officer Schismenos of the Akron Police Department testified on behalf of the state and described the following sequence of events. At approximately 11:30 p.m. on July 17, 2001, Officer Schismenos and his partner, Officer Anthony, were on patrol in an unmarked police cruiser for the Akron Metropolitan Housing Authority near Rosemary Square in Akron. There was an increased police presence in that area because of a recent increase in crime, including shooting and drug-related activity.
{¶ 8} The officers observed a red and white Cadillac in which Appellant was the sole occupant near Patapsco Place, and decided to conduct a computer check of the vehicle's license plate number. The officers discovered that the vehicle was registered in the name of one Objarahnawen Collins. There were no L.E.A.D.S. entries signifying outstanding warrants for Mr. Collins. However, the officers learned that there was a "lid," or a "hit," for an outstanding warrant in connection with the vehicle for a Mr. Anthony, aka "Brett," Flowers. The lid was an indication that Mr. Flowers had previously been arrested as a passenger in the vehicle.
{¶ 9} During the time the officers were running the plates on the Cadillac, the vehicle left the area. The officers searched for several minutes, but were unable to locate the automobile. The officers then decided to get some coffee. As they drove on South Arlington Street, they spotted the Cadillac in the parking lot of a convenience station. The officers pulled into the station's parking lot and observed Appellant walking back to his vehicle from the convenience store. Upon seeing the uniformed officers exiting the police cruiser, Appellant quickly dropped his hands to his sides so that they were out of the officers' view. Officer Anthony "told [Appellant] to hold up for a second" as Appellant stood at the open door of the Cadillac. Officer Anthony then ordered Appellant to place his hands on top of the car. Appellant did not immediately comply, so Officer Anthony drew his gun and repeated the order.
{¶ 10} While Officer Anthony was addressing Appellant, Officer Schismenos approached from the side of the vehicle. Through the passenger side window, the officer saw Appellant quickly thrust something into his right front pocket before placing his hands on the car. As Officer Schismenos drew closer to Appellant's side, he observed a plastic bag of crack cocaine sticking out of Appellant's right front pocket. The officers then handcuffed and arrested Appellant, and found more crack cocaine, ecstasy pills, marijuana, and more than five hundred dollars in cash on his person.
{¶ 11} Primus Vaughn, assistant manager on duty at the convenience station where Appellant was apprehended, also testified at the suppression hearing. Mr. Vaughn testified that Appellant approached the take-out window of the station, purchased two gallons of juice, and walked back to his car. Mr. Vaughn testified that he next heard, through a microphone on the outside of the takeout window, one of the police officers say "Freeze" and "Put your hands on top of the car." According to Mr. Vaughn, Appellant was shaking when the officer pointed the gun at him, but complied with the officer's order.
{¶ 12} The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" The United States Supreme Court has stated:
 {¶ 13} "Time and again, this Court has observed that searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well delineated exceptions." (Quotations omitted.) Minnesota v. Dickerson (1993), 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334.
{¶ 14} We begin by observing that this case involves two separate, warrantless seizures — of Appellant's person, and of the drugs found on him — which must be analyzed in light ofFourth Amendment jurisprudence. With respect to the crack cocaine discovered in Appellant's pocket, the state has argued that the "plain view" exception to the prohibition of warrantless seizures applies. Under this exception, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." Id. at 375.
{¶ 15} It is undisputed that the incriminating character of the crack cocaine protruding from Appellant's pocket was immediately apparent to Officer Schismenos at the time he observed it. Once the officer identified the contraband, moreover, he had a lawful right of access to it, and could lawfully seize it and arrest Appellant.[1] The only question before this Court with respect to the applicability of the plain view exception is whether Officers Schismenos and Anthony were lawfully in the position from which they viewed the bag of crack cocaine hanging out of Appellant's pocket.
{¶ 16} Making this determination requires an examination of the second seizure — that of Appellant's person — to determine whether the officers unlawfully detained Appellant in the moments preceding their observation of the cocaine in his pocket. If the officers seized Appellant in violation of his Fourth Amendment rights, then they were not lawfully in the position from which they observed the cocaine. The plain view exception would not apply in that circumstance, and the evidence confiscated from Appellant would be tainted by the illegal seizure.
{¶ 17} Appellant has contended that the officers' warrantless seizure of Appellant's person was not based upon: 1) his consent, 2) a reasonable, articulable suspicion of criminal activity, or 3) probable cause to believe that Appellant had committed a crime.
{¶ 18} Consensual encounters between police and citizens do not implicate Fourth Amendment protections at all. Florida v. Royer (1982),460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229. "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen[.]" Royer at 497. Consensual encounters, therefore, are those "where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." State v. Taylor (1995),106 Ohio App.3d 741, 747, citing United States v. Mendenhall (1980),446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497.
{¶ 19} In Taylor, the court distinguished consensual encounters from seizures on the basis of whether "the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter." Taylor, at 748; see, also, California v. Hodari (1991), 499 U.S. 621, 111 S.Ct. 1547,113 L.Ed.2d 690 (holding that a seizure occurs where a law enforcement officer either applies physical force in restraining an individual, or exercises a "show of authority" to which the individual complies or submits). Indicia of a seizure, even where the person did not attempt to leave, include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. Mendenhall, at 554.
{¶ 20} While the state argued at the suppression hearing that the encounter between the officers and Appellant was consensual in nature, we note that the state abandoned this argument on appeal. The transcript of testimony from the hearing, moreover, indicates that just before they observed the crack cocaine in Appellant's pocket, the officers had drawn their guns and ordered Appellant to place his hands on top of the car. The record also shows that Appellant complied with the order and had placed his hands on top of the car when Officer Schismenos approached and observed the contraband in Appellant's pocket. The contact between Appellant and the officers, therefore, clearly exceeded the bounds of a consensual encounter and constituted a seizure at the time critical to our analysis under the plain view exception.
{¶ 21} In the instant case, it is undisputed that Officers Schismenos and Anthony did not have probable cause to arrest Appellant at any time prior to their observation of the cocaine in his pocket. Not all seizures of the person, however, must be justified by probable cause to arrest for a crime. Royer at 498. A police officer may conduct an investigative stop where he has a reasonable suspicion, based on specific and articulable facts, that an individual is or has been engaged in criminal activity. Terry v. Ohio (1968), 392 U.S. 1, 19-24,88 S.Ct. 1868, 20 L.Ed.2d 889; State v. Andrews (1991), 57 Ohio St.3d 86, 87, certiorari denied (1991), 501 U.S. 1220. The police must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." Terry at 21; see, also, State v. Bobo (1988),37 Ohio St.3d 177, 180-81, certiorari denied (1988), 488 U.S. 910;Andrews at 87-88. A police officer's "reasonable suspicion" is measured by an objective standard: "would the facts available to the officer at the moment of the seizure * * * `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Bobo at 178-179, quoting Terry at 21-22.
{¶ 22} The officers were not aware of any outstanding warrants, "lids," or other negative information about either Appellant or Mr. Collins, the owner of the car. Nor had the officers observed Appellant commit any traffic offenses or engage in other conduct that would justify a suspicion that Appellant was engaged in criminal activity.[2] The sole basis for the officers' stop of Appellant was their suspicion that he might be Mr. Flowers, the non-owner of the vehicle for whom there was an outstanding warrant and who at one time had been arrested as a passenger in the Cadillac being driven by Appellant.
{¶ 23} At the suppression hearing, Officer Schismenos testified that the lid provided a description of Mr. Flowers, which he recalled as "a black male, gave a height, weight, description and a bunch of other indicators. I believe he had some tattooing as such noted also." Officer Schismenos testified that he believed the warrant for Mr. Flowers was for a traffic offense, but that "caution notes [were attached to] the lid or the warrant indicating drug trafficking priors." The purpose of a caution note, the officer testified, was to alert officers to the possibility that the individual associated with the note might be armed.
{¶ 24} Officer Schismenos testified that when he observed Appellant returning to the Cadillac from the Citgo station, he noted that Appellant's appearance was "similar to * * * information we had off the warrant [for Mr. Flowers], and [Appellant] was the sole occupant of the vehicle at that time and — when we had saw it at Patapsco Place." When questioned whether he recalled the description on the warrant, Officer Schismenos stated: "Pretty much it was the same age, black male, moderate height, weight on the warrant." The officer also testified that there was "one year difference" between the age of Appellant and the age of Mr. Flowers. The officer could not, however, recall the height and weight of Mr. Flowers. Officer Schismenos testified that it was not until after he arrested Appellant for possession of drugs that he learned that Appellant was not Mr. Flowers.
{¶ 25} Based on Officer Schismenos' testimony that the lid indicated an outstanding warrant for Mr. Flowers and the general similarities in appearance of Mr. Flowers and Appellant, we conclude that the officers had reasonable suspicion to stop Appellant to determine whether he was Mr. Flowers. The officers therefore lawfully obtained their vantage point from which they observed the cocaine in Appellant's pocket. The "plain view" exception consequently applies to the warrantless seizure of the drugs observed in Appellant's pocket, and the balance of the contraband was lawfully seized during the search incident to his arrest. The trial court did not err in overruling Appellant's motion to suppress the evidence against him.
 III
{¶ 26} Appellant's sole assignment of error is overruled. The judgment of the trial court is affirmed.
BAIRD, P.J. CONCURS
[1] The balance of the contraband confiscated from Appellant could then lawfully be seized pursuant to a search incident to his arrest.
[2] The state has argued that Appellant engaged in suspicious "furtive movements" during the encounter, but the state has failed to demonstrate that any such conduct by Appellant occurred prior to the seizure of Appellant.